ALBERT C. STANTON, ADDIE L. LOOMIS, AND GEORGE B. HITCHCOCK v. GEORGIA HITCHCOCK.

*Homestead—Deed not signed by non-resident wife.*

1. A married man emigrated from the state of New York to Michigan, leaving his wife and two minor children behind him, she expecting to join him in the new home, but never doing so. He bought a vacant lot of land, and built a house upon it, and two years after his arrival remarried, without obtaining a divorce from the first wife, the second wife supposing him to be single, and living with him as his wife on said land until his death, prior to which event he conveyed the land to her. None of the first family ever lived in Michigan, except that a son, aged about 18, came and was received as a member of his father's *new* household, until dismissed for ill-treating the children of the second wife. The husband never made or proposed to make the land a home for the *common* occupancy of himself and *first* wife, but it was *intended* for and *actually* occupied by the *second*

wife and family, and so continued to be during the life-time of the husband.

*Held*, that the land never became the homestead of the *first* wife, and that the deed by the husband to the *second* wife was not void for want of her signature.

2. The object of the constitutional provision for a homestead is to protect that dwelling which has been the *actual* home of the family from such disturbance as will make them lose its enjoyment. It is confined, by its language, to the property *actually occupied* as a *homestead* by a *resident* of Michigan; and, if the owner has a family, it is the actual home of *that* family which is protected from seizure by creditors.

3. There is nothing in the statute which contemplates that a wife who has never lived on the premises, or claimed to live there, may, after her husband's death, claim such an interest by relation as will avoid his dealings with property which he never meant should be the home of the absentee, however much he may have wronged her.

4. Where a wife has once had her home with her husband in his dwelling, he cannot deprive her of that *vested* right by driving her out.

5. The character of any property as a homestead depends on actual *intention*, and it may be entirely destroyed by a removal of residence, after which the property stands liable to sale or any other disposal at the pleasure of the owner.[1]

Error to Ionia. (Smith, J.) Argued November 3 and 4, 1886. Decided January 20, 1887.

Ejectment. Defendant brings **error.** Reversed. The facts are stated in the opinions.

*Lemuel Clute,* for appellant.

A man or woman not domiciled in Michigan cannot claim under the homestead law: *McHugh v. Curtis,* 48 Mich. 262.

A wife may have a separate domicile: *Kinnier v. Kinnier,* 45 N. Y. 535, 544; *People v. Dawell,* 25 Mich. 247, 263; *Cheever v. Wilson,* 9 Wall. 108, 123, 124; *Harding v. Alden,* 9 Greenl. 140; Story, Confl. Laws, § 46 (note); 2 Bish. Mar. & Div. §§ 125, 127, 128.

The wife and children, being non-residents, would not be entitled to a year's support under How. Stat. § 5847; *Drake*

---

[1] As to nature of removal, see *Earll v. Earll*, 60 Mich. 30. See *Deville v. Widoe, post,* as to effect of intended occupancy.

*v. Kinsell*, 38 Mich. 232, 237; *Robinson v. Baker*, 47 Id. 619; *McHugh v. Curtis*, 48 Id. 262; *Patterson v. Patterson*, 49 Id. 177.

Hitchcock could convey the land, and bar his first wife's dower: How. Stat. § 5753; *Pratt v. Tefft*, 14 Mich. 191, 200; *Ligare v. Semple*, 32 Id. 438.[1]

*Wilson & Trowbridge*, for plaintiffs.

[The Michigan cases cited by counsel, with others, are referred to in the dissenting opinion of CHAMPLIN, J.— REPORTER.]

CAMPBELL, C. J. In this case the controlling facts found are these:

In 1873, Thomas J. Hitchcock came to Michigan, leaving behind him, in New York, a wife, Caroline Hitchcock, and two minor children. The wife knew of his coming, and expected at some time to join him, but was never in Michigan. In March, 1875, Hitchcock bought a vacant lot, and subsequently built on it. Whether he began to build or not before his second marriage does not appear, but the house was finished thereafter.

In December, 1875, he, without divorce from his previous wife, married defendant, who married him in good faith, supposing him to be single. After the house was built, they moved into the house, and had children, who, with the parents, lived in it as their home till he died, when the second wife became owner by conveyance from Hitchcock, unless void by reason of the claims of the former wife to a homestead interest in it. None of the first family ever lived in the house, except that a son, aged then about 18, came and was received as a member of the household, until dismissed for ill-treating the children of the second wife.

It appears from the finding that the first wife never lived in Michigan, and, of course, never lived in the house; that

---

[1] See *Bear v. Stahl*, 61 Mich. 204 (head-note 3).

Hitchcock never made or proposed to make it a home for their common occupancy; that it was intended for and actually occupied by the second wife and family, and so always continued.

The question, then, is whether it ever became the first wife's homestead. That is the only question. That Hitchcock was guilty of wrong is clear enough. But whether the fact of his wrong-doing changes the character of the occupancy of the house is quite another question, which must be decided as a question of fact, and not as one of propriety. The inquiry is not what he ought to have done, but what he did.

The object of the Constitution is not ambiguous. It is to protect that dwelling which has been the actual home of the family from such disturbance as will make them lose its enjoyment. It is confined, by its language, to the property actually occupied as a homestead by a resident of Michigan; and, if the owner has a family, it is the actual home of that family which is protected from seizure by creditors. There is nothing in the statute which contemplates that a wife who has never lived on the premises, or claimed to live there, may, after her husband's death, claim such an interest by relation as will avoid his dealings with property which he never meant should be the home of the absentee, however much he may have wronged her. The statute which, after a husband's death, secures rights to a widow, is confined expressly to resident widows.

Under our legal regulations, no imaginary or imputed intention can supplant the actual intent. It would be little short of absurdity to hold that Hitchcock could at the same time contemplate the occupancy of the house as the home of his second wife and also of the first. This is not pretended by any one. It appears expressly that it was the actual and continued home of the second wife and family, and that all the domestic arrangements and purposes were with this in view. The first wife never contemplated it as her and her

husband's joint home, and would, no doubt, have repudiated any such idea. After this marriage the first wife had no purpose of living with him at all. She never looked upon or used or sought it as a home, and never got the homestead rights of a surviving widow in it. The only right now set up is the right to have the disposition of it made by the husband avoided for want of her signature.

We have held, and I think rightly, that, where a wife has once had her home with her husband in his dwelling, he cannot deprive her of that vested right by driving her out. But here the home interest never vested. The law was made to protect actual homes, and not mere possibilities,—still less to change by theory into a home that which is actually the reverse. In the present instance the second wife was made so in good faith, and had some natural equities in the premises which would not probably have been legally recognized without the conveyance. But if the case had been worse, and the house occupied by the husband in a life of shame and indecency, it would, I think, be a very singular rule of law which would protect it as a homestead, and treat it as a home, and especially the home of the absent wife. The occupancy is one which she actually repudiated, and which, in the absence of any showing, she wloud be presumed to repudiate, and she could not decently do otherwise. But to hold it to have been her home in the eye of the law, when she purposely and very properly determined to reside elsewhere, is not, I think, to carry out the great and worthy purposes of the homestead laws.

It must be remembered, not only that the character of any property as a homestead depends on intention, but that it may be entirely destroyed by a removal of residence. There is nothing in the law to prevent such removal at any time, and after it the property stands, like any other property, liable to sale or any other disposal by the owner at his pleasure. Under our laws the sale by a husband whose wife is non-resi-

dent carries the property free from any right of dower.  Actual non-residence in such case, in spite of the marital relation, cuts off any control over the sale of a complete title. There is as much reason for the confinement of the homestead law.  Marital rights are mutual.  The State of Michigan, had Hitchcock never married defendant, could not have aided him in compelling his wife to join him, or exercised any control whatever over the persons or conduct of the absent children.  It might divorce the parties for the wife's desertion, but it could not regulate their family relations while not divorced.  Until divorced, if the first wife could, in the present instance, prevent the sale of the house, she could just as well do so while actually doing all she could to make a family home impossible.  Her merits in the one case, or demerits on the other, would not count at all in the decision.  The law would be grossly tyrannical if it tied the husband's hands in the one case at least, and it cannot be possible that such consequences could have been designed by the Constitution.  It was designed to protect those who had subjected themselves to its laws, and acted in reliance on them, but not to treat as homes what are not homes, or give powers to non-residents which could not, under any circumstances, be of any use to them personally.

I think the judgment should have been given for the defendant, and that it should be reversed, and so entered, and the record remanded.

SHERWOOD, J., concurred.

CHAMPLIN, J., (*dissenting*).  Plaintiffs brought ejectment against defendant, and the cause was tried before the court without a jury, who, upon the request of the parties, made a written finding of facts and law, and thereupon gave judgment for plaintiffs.  The finding is as follows:

"1. Thomas J. Hitchcock, for some years prior to 1873, was a resident of the state of New York.  Sometime in the

year 1873 he left the state of New York, and came to Michigan.

"2. Some years prior to 1873 he was married in the state of New York. His wife's name is Caroline Hitchcock. They lived together as husband and wife, in said state, until sometime in the year 1873, when he left his wife and family, and came to Michigan.

"3. Two children were born to Thomas J. Hitchcock and his wife, in the state of New York, Addie L. and George B. Hitchcock; being two of the plaintiffs in this cause, Addie L. having married, and her name now being Addie L. Loomis.

"4. Previous to and up to about the time that Thomas J. Hitchcock left the state of New York, and came to Michigan, in 1873, he, with his family, had occupied a piece of land in Chenango county, New York, as their home; but just about the time he left the state of New York it was sold on forced sale, and the wife had no homestead in that state, afterwards or elsewhere, separate from her husband; that, previous to his leaving New York, said Thomas J. Hitchcock sold off all his personal property (excepting household. furniture), obtaining therefor about six hundred dollars, and took the money with him, promising his wife that he would purchase a new homestead.

"5. In March, 1875, Thomas J. Hitchcock purchased the land in question, being the south-west quarter of the north-east quarter of section number ten, in township number five north, range six west, in Ionia county, Michigan, of Sanford A. Yeomans; there being not to exceed forty acres of the same, and its value, together with dwelling-house, with its appurtenances thereon, being less than fifteen hundred dollars, it never having exceeded that amount in value, and the same not being included in any recorded town plat or city or village.

"6. On the twenty-eighth day of December, 1875, Thomas J. Hitchcock went through the form of a marriage ceremony, in this State, with Georgia Travis, who is the defendant in this cause.   At this time, December 28, 1875, Caroline J. Hitchcock, the wife of Thomas J. Hitchcock, and his two children, were living in the state of New York.   The marriage between Thomas J. Hitchcock and his wife, Caroline, has never been dissolved, and she is now living, and was present at the trial.

"7. Soon after the marriage between Thomas J. Hitchcock and defendant, they moved onto the land in question, Thomas J. having built a house thereon, and they lived thereon as

husband and wife until the death of Thomas J., which occurred in this county, April 10, 1884. That Thomas J. Hitchcock and defendant, while living together as husband and wife on the land in question, had three children born to them, and Thomas J. and defendant and the children occupied the premises as their home up to the time of the death of Thomas J. Hitchcock; and that he, Thomas J. Hitchcock, owned no other land, and defendant continued to live on the land to the time of trial, and had no other homestead; that, a short time after the marriage ceremony between Thomas J. Hitchcock and the defendant, and previous to the moving on the land in question, she was told by her father that he had been informed that said Thomas J. had a wife living in the state of New York. That, after coming to Michigan, he passed as a single man, and defendant married him in good faith, supposing him to be single.

. "8. Thomas J. Hitchcock, from 1875 to the time of his death, was a resident of Sebewa township, in this county, the township where the land is, and his home was on the land in question; he, Thomas J. Hitchcock, during said time, occupying said land as his homestead.      /

"9. In the spring of 1880, George B. Hitchcock, one of the children of Thomas J. Hitchcock and Caroline Hitchcock, came from the state of New York to Michigan, and remained with his father and the defendant, and their family, on the land in question, for two or three months, and then went away. He was then about eighteen years old, and was there as a member of his father's household, under his care and maintenance, remaining until after the deed under which defendant claims in this suit was made and executed by his father to her; and, when he did leave, was sent away by his father because of his conduct towards defendant's children.

"10. It is conceded that after the purchase of the land in question by Thomas J. Hitchcock, of Sanford A. Yeomans, in 1875, he was the owner of the same in fee simple.

"11. On the twenty-second day of May, 1880, Thomas J. Hitchcock, made, acknowledged, and delivered a warranty deed of the land in question to Georgia Hitchcock, the defendant, which deed being in the usual form, and conveying the entire estate in the premises, except as the following language appearing after the general warranty clause may limit or qualify the same, viz.: 'Excepting the use and benefits, and the right of possession, of the said above-described land during and continuing his natural life; and, further,

this deed is not to become operative until his demise.' That said deed was recorded in the office of the register of deeds for this county on the twenty-ninth day of June in the same year. It is signed by Thomas J. Hitchcock only. His wife, Caroline Hitchcock, did not sign the same, or join in the deed.

"12. At the date of this deed, and at the time of the death of Thomas J. Hitchcock, his wife, Caroline, was still living in the state of New York, she never having come to Michigan until after the death of Thomas J. Hitchcock, and she is still living in the state of New York.

"13. Georgia Hitchcock, the defendant, continued, after the death of Thomas J. Hitchcock, to occupy the premises, with her children, as their home, up to the commencement of this suit; the defendant claiming them under the deed to her from Thomas J. Hitchcock.

"14. On the twenty-ninth day of July, 1884, Caroline Hitchcock and her two children by Thomas J. Hitchcock executed and delivered to Albert C. Stanton, one of the plaintiffs in this cause, an undivided one-half of the premises in question, and on the twenty-fifth day of November, 1884, Caroline Hitchcock made a quitclaim deed of the land in question to Addie L. Loomis and George B. Hitchcock, being the two children of Thomas J. Hitchcock and Caroline Hitchcock, and two of the plaintiffs in this cause.

"15. Up to the time of the trial there never has been any dissolution of the marriage between Thomas J. Hitchcock and Caroline Hitchcock.

"16. Thomas J. Hitchcock deserted his wife and children in New York, and intended to do so at the time he left, but gave them to understand he was going to Michigan to buy a new home for them, his wife, Caroline, expecting to follow with the children as soon as he should send for them, and she was willing to come and live with him until she became informed of his marriage with defendant, and the birth of the first child by her. He never sent for his wife, Caroline, or furnished her means of support. The defendant's three children by Thomas J. Hitchcock were born as follows: September 20, 1876; October 16, 1878; March 8, 1881. His wife in New York learned of his living with defendant about the time the first child was born; and, when she learned of the fact, she would not then have gone to Michigan to live with him.

"From the foregoing facts I conclude that the deed from Thomas J. Hitchcock to Georgia H. Hitchcock, dated May

22, 1880, not having the signature of his wife, Caroline Hitchcock, and purporting to convey the homestead of Thomas J. Hitchcock, is void, and the plaintiffs are entitled to recover. Judgment will be entered for the plaintiffs, with costs to be taxed."

The question raised upon these findings is whether a wife who has never resided in this State, or been domiciled therein, is entitled to the protection of the homestead provisions of our Constitution and statutes. The Constitution, Art. 16, § 2, provides:

"Every homestead of not exceeding forty acres of land, and the dwelling-house thereon, and the appurtenances to be selected by the owner thereof, and not included in any town plat, city, or village, or, instead thereof, at the option of the owner, any lot in any city, village, or recorded town plat, or such parts of lots as shall be equal thereto, and the dwelling-house thereon, and its appurtenances, owned and occupied by any resident of the State, not exceeding in value fifteen hundred dollars, shall be exempt from forced sale on execution, or any other final process from a court, for any debt contracted after the adoption of this Constitution. Such exemption shall not extend to any mortgage thereon lawfully obtained ; but such mortgage or other alienation of such land by the owner thereof, if a married man, shall not be valid without the signature of the wife to the same."

The fact that the defendant was imposed upon in her marriage with Thomas J. Hitchcock, and contracted that relation in good faith, believing him to be a single man, must be laid entirely out of view in this case. Her rights must be determined by the same legal principles that would be applied had Hitchcock conveyed the premises in question to a third party in no manner connected with him, and the contest was between such third party and the plaintiffs. The defendant does not occupy the position of a *bona fide* purchaser. She gave nothing for the property conveyed to her, and it is found as a fact that "a short time after the marriage ceremony between Thomas J. Hitchcock and the defendant, and previous to the moving on the land in question, she was told by her

father that he had been informed that said Thomas J. had a wife living in the state of New York;" and, further, that in 1880 one of the sons of Thomas J. came to Michigan, and for a time resided in the family upon the land in question.

Counsel for defendant claims that the deed to defendant is not void for two reasons:

1. It did not convey, nor purport to convey, the home of Caroline Hitchcock; for, being a non-resident, she was not entitled to the benefit of our homestead law, and, even if a resident, the home right was not affected by the conveyance.

2. The land was not, in the sense of our Constitution and statute, the homestead of Thomas J. Hitchcock.

The argument of the defendant's counsel is, and I quote from his brief, that—

"It cannot be possible that it is any part of the intent of our law to shield or protect a man who deserts his family in a foreign state, and allow him to come here and live in adultery with a Michigan woman, and have, while so living, the same benefit of our homestead laws that he would have had if he had brought his family with him. It will be admitted that, if the deed is void, the land could not have been sold for his debts while living; in other words, it will be claimed that our law protects and encourages a domestic traitor in fleeing from his duty and family in a foreign state, and coming here to deceive a woman of our Commonwealth, and by her cast a blight over the lives of a new family by causing them to be born out of lawful wedlock."

It seems to me that if it should be held that Hitchcock did not have a homestead interest in the lands upon which he resided, instead of being a shield and protection to him, it would operate as a sword against his wronged wife and deserted family. We would, in so holding, assist him to carry out his villainy by placing a ban upon the homestead rights of the wife and family, and suspend, in favor of this domestic rebel and traitor, the plain provision of our Constitution. As to casting a blight over the lives of a new family, I do not see how it would have that effect. It seems to me that, when defendant became aware of the deception upon

her, she should have refused longer to live with him, in which case there would have been no children born out of lawful wedlock, as her first child was not born until 1876. I cannot reconcile my ideas of justice or propriety with the notion that Hitchcock could acquire any rights, as against his wife and family, by willfully deserting them, and adding crime to injury by a bigamous marriage with defendant. Nor do I perceive how she lost any of her rights as a married woman and wife by such conduct on his part. Neither do I see how lapse of time would deprive her of her rights. It, in my judgment, merely aggravated the wrong. He deserted her, and left her in poverty to struggle on unaided by him in the nurture, care, and maintenance of her children.

It is said that she abandoned him. On the contrary, he deserted her. That a deserted wife, who is innocent of any wrong-doing, can be guilty of abandonment of her husband, involves a solecism in legal ethics, is too plain for argument. It is said that she did not follow him to Michigan. She was not requested by him to do so. But it is urged that, after she became informed of her husband's infidelity, she would not then have gone to Michigan to live with him. Be it so. She had just cause, and should not be visited with a penalty for doing what any decent wife and mother would have done under like circumstances. It is the policy of the law to uphold virtue, and not to place a premium upon vice and immorality. I cannot consent to reward the deserter from his family, or the participator in his wrong, by giving to the Constitution any strained construction in her favor.

It is said that a wife may obtain a separate residence and domicile in a state other than where her husband resides, and that she can institute suits in the forum of such states. But what is the underlying principle of such decisions? It is that the wife may be afforded proper remedies and protection; that her rights may be enforced against a husband who has wronged or deserted her; and it would be a new and unheard-of

application of the doctrine to invoke it for the purpose of breaking down or debarring her rights, based upon her marital relations with a husband who has deserted her.

There is no room for claiming upon this record that Thomas J. Hitchcock did not own and occupy the land in question as a homestead, or that he was not entitled to the privileges of a homestead under the provisions of the Constitution of this State. He purchased the land in 1875, and became the owner thereof in fee simple. He had resided upon the land five years or more when he executed the deed in question. He had a wife living at the time, who was entitled to all the rights and protection of a married woman concerning property in this State, who did not join in the deed. The Constitution declares a deed executed by the husband of his homestead without the signature of the wife to be invalid. Why, then, is not the deed in question void?

The Constitution and statutes relative to homestead exemptions should be construed liberally, to carry out the object contemplated by the law; and no court has been more liberal in its interpretation and construction of homestead laws than this, as is evidenced by the following cases: *Beecher v. Baldy,* 7 Mich. 488; *Dye v. Mann,* 10 Id. 291; *Fisher v. Meister,* 24 Id. 447; *Amphlett v. Hibbard,* 29 Id. 298; *Wallace v. Harris,* 32 Id. 380; *McKee v. Wilcox,* 11 Id. 358; *Orr v. Shraft,* 22 Id. 260; *Bunker v. Paquette,* 37 Id. 79; *Lozo v. Sutherland,* 38 Id. 168; *Showers v. Robinson,* 43 Id. 502; *Sherrid v. Southwick,* Id. 515; *Robinson v. Baker,* 47 Id. 619; *Pardo v. Bittorf,* 48 Id. 275; *Shoemaker v. Collins,* 49 Id. 595; *First Nat. Bank v. Jacobs,* 50 Id. 340; *Reske v. Reske,* 51 Id. 541; *Griffin v. Nichols,* Id. 575; *Girzi v. Carey,* 53 Id. 447; *Rowe v. Kellogg,* 54 Id. 206; *Allen v. Cadwell,* 55 Id. 8; *Earll v. Earll,* 60 Id. 30; *Karn v. Nielson,* 59 Id. 380; *Riggs v. Sterling,* 60 Id. 643; *Cleaver v. Bigelow,* 61 Id. 47; *Davis S. M. Co. v. Whitney,* Id. 518; *Hall v. Loomis,* 30 N. W. Rep. 374, and note at end of case (S. C. 63 Mich. 709).

By the repeated decisions of this Court it has been held that a deed of the homestead in which the wife did not join is absolutely void as to such homestead. The reasoning in those cases is satisfactory, and it is unnecessary to repeat it here.

In *Sherrid v. Southwick*, 43 Mich. 515, the action was ejectment, brought by Mrs. Southwick as heir at law of John Cave after his decease. Cave was married in 1856 to Mary E. Cave, who was living at the time the suit was brought. The premises in question in that suit were owned and occupied by John Cave as a homestead from 1862 to the time of his death, which occurred in 1872. While Cave and his wife lived together, he treated her with cruelty, and neglected to provide for her the comforts of life, and in 1862 she separated from him, and did not live with him afterwards, though they were never divorced. In 1867, Cave gave a mortgage covering the homestead, in which his wife did not join. She was then living in another state. It appeared that, after his wife separated from him, he lived with another woman as his wife, who joined in the execution of the mortgage. The question in issue was as to the validity of this mortgage. Mr. Justice COOLEY, in delivering the opinion of the Court (pp. 518, 519), said:

"An argument against the invalidity of the mortgage, because of the want of the wife's signature, is drawn from the fact that she had then separated herself from him, and was living out of the State. It is said she was not entitled to be consulted under such circumstances. Her separation, however, was not an abandonment, and not a surrender of any rights. The finding shows that she was driven from her home by misconduct on the part of her husband, of a nature so grievous that she might have claimed a divorce under the statute. When a wife is thus driven off, she carries with her all her marital rights,—the right to support, to dower, to control the disposition of the homestead. *Barker v. Dayton*, 28 Wis. 367, 383. This power of control is conferred upon her as a means of conservation and protection; but, if the husband could acquire independent authority to dispose

of the homestead without the wife's consent, by driving her with blows from his house, or by such other conduct towards her as should altogether destroy the comfort of home, her constitutional right to withhold her consent from a sale or mortgage would be of no value whatever. Indeed, as a means of restraint upon a vicious and unprincipled man, it might be worse than useless; for it would benefit him, if he desired to sell or incumber his homestead, to first break up his home. *Vanzant v. Vanzant*, 23 Ill. 536, 542. But what the law intends is, she shall have in her own hands, exempt from her husband's control, an important means of protection to the home, as well as to the homestead. *Meader v. Place*, 43 N. H. 307; *Sellon v. Reed*, 5 Biss. 125, 126."

And it was further held in that case that the mortgage was absolutely void, because the Constitution declares that—

"A mortgage or other alienation of such land by the owner thereof, if a married man, *shall not be valid* without the signature of the wife to the same."

Counsel for defendant claims that there is a distinction between the case of *Sherrid v. Southwick* and the one at bar. He points out in that case that the homestead was at one time occupied by both husband and wife; that he drove her from the home; and that there was no abandonment of her homestead rights. There is that distinction as to occupancy. But, in my opinion, it is a distinction without a difference. Caroline J. Hitchcock had a right to occupy the premises with her husband as a homestead, but was prevented by his wrongful act. Mrs. Cave exercised her right to occupy the homestead, but was driven away and prevented by the wrongful act of the husband.

There is no evidence and no finding that Mrs. Hitchcock abandoned her homestead right. This right accrued to her in virtue of the ownership and occupancy of her husband of the premises as a homestead, and does not depend necessarily upon her living with him upon the premises. Such right accrued to her the moment the homestead right became vested in her husband, and long before she knew or was informed of

his illegal marriage with defendant, and during which time she was willing to come and reside with her husband in, Michigan. She has done nothing to forfeit such right, and it is my opinion that the deed is void, and the judgment. ought to be affirmed.

MORSE, J., did not sit.