STANDARD *v*. JEWELL.

1. DEEDS—IDENTITY OF GRANTOR—NAMES.
    Where the grantor in a deed testified that his full name was Francis Marion Warner, and that he sometimes signed Francis M. and sometimes Frank M., an objection that the deed was void because signed Frank M., *held*, untenable.

2. SAME—CONVEYANCE PRIOR TO ISSUANCE OF PATENT—VALIDITY.
    Although the conveyance of homestead lands was made prior to the issuance of the patent to the grantor by the United States, the contention that grantor had no title to convey cannot be sustained.

3. HOMESTEADS—HUSBAND AND WIFE—WIFE LIVING IN ANOTHER STATE.
    A wife living separate and apart from her husband in another State has no homestead rights in her husband's lands in Michigan. Affirming *Stanton* v. *Hitchcock*, 64 Mich. 316.

4. ADVERSE POSSESSION—LICENSEE—LANDLORD AND TENANT — NO-
TICE.

  It is settled law in Michigan that a tenant or licensee can-
    not convert his occupancy under license into an adverse
    holding without actual notice to the holder of the legal
    title.

5. SAME—CONTINUOUS POSSESSION.

  Where the occupation of the lands by plaintiffs or any one
    in their behalf was not continuous, the court below prop-
    erly held that title by adverse possession was not estab-
    lished.

Error to Otsego; Sharpe, J. Submitted April 15,
1919. (Docket No. 40.) Decided May 29, 1919. Re-
hearing denied October 6, 1919.

Trespass *quare clausum fregit* by Frank Standard
and others against Edson Jewell, Walter D. Young
and others. Judgment for defendants on a directed
verdict. Plaintiffs bring error. Affirmed.

*W. A. Harrington,* for appellants.

*James E. Duffy (Russell H. Neilson,* of counsel),
for appellee Young.

*W. L. Townsend,* for other appellees.

Plaintiffs sued in an action of trespass, alleging
that defendants had wrongfully entered upon their
lands and cut and removed therefrom certain timber.
Under the plea of the general issue defendants gave
notice that they would show that plaintiffs never had
title to the lands or any part thereof upon which the
alleged trespass was committed and further that the
title thereto rested solely and exclusively in defend-
ant Walter D. Young.

The pertinent facts appear to be that one Francis
Warner (otherwise known in the record as Frank M.
Warner), a civil war veteran, entered upon the land
in question, together with 40 acres adjoining, under

the homestead law. He resided upon the land a sufficient length of time to comply with the provisions of the homestead law and on May 17, 1881, he received from the United States Land Office a final receipt in the following terms:

"Final Receipt No. 4761.
"Application No. 7839.     Homestead.
"Receiver's Office, Reed City, Mich., May 17th, 1881.
"Received of Francis Warner the sum of eight dollars being the balance of payment required by law for the entry of S. ½ N. W. ¼ and N. ½ of S. W. ¼ section 6 in township 32 N. of range 3 west containing 162 80/100 acres. Under section 2291 of the Revised Statutes of the United States.
"$8.00.          W. H. C. MITCHELL, Receiver."

Prior to his coming to Michigan said Warner had married one Sarah Hodgkins in the State of New York. She, however, never came to Michigan nor resided upon the land in question with Warner. He instituted divorce proceedings against her in Indiana and claims to have believed he had a decree of divorce; at any rate, he married one Allie D. Plumley, with whom he lived for several years. On June 20, 1881, he deeded the lands in question to Allie D. Warner, his wife, and at his request she, on January 13, 1883, executed a mortgage for $350 thereon to William Corning of Rochester, New York. This money was received by Francis Warner. On May 10, 1884, the United States patent was issued to Francis Warner. It is to be noted that this patent is of a later date than the deed from Francis Warner to Allie D. Warner as well as later than the mortgage from Allie D. Warner to William Corning. Said mortgage was foreclosed and a sheriff's deed covering the land in question issued to William Corning's estate, dated February 24, 1896. Title from the estate passed to defendant Walter D. Young by deed dated August 8, 1910. Plaintiffs rested their claim of title upon two grounds:

1st. A quitclaim deed dated January 28, 1903, from Francis Warner to Henry B. Standard, father of plaintiffs, now dead, covering the lands in question, and 2d. Adverse possession.

They further claim that defendants' title is bad for the reason that the deed from Francis Warner to Allie D. Warner was void for two reasons:

1st. Because it was executed prior to the date of the patent from the government to Francis Warner, and 2d. Because Sarah Hodgkins who was (it is asserted), at that time Warner's legal wife, did not join in the deed of the homestead.

The learned circuit judge directed a verdict in favor of the defendants upon the ground that the deed from Francis Warner to Allie D. Warner was valid even though his legal wife, Sarah Hodgkins, did not join therein; that therefore the quitclaim deed from Francis Warner to Standard conveyed no title. He further held as a matter of law that plaintiffs had failed to establish title by adverse possession for the requisite statutory period. Plaintiffs now review the case in this court.

BROOKE, J. (*after stating the facts*). It is the contention of counsel for plaintiffs that a perfect paper title in plaintiffs was shown through:

1st. Homestead entry by Francis Warner.
2d. Patent to Francis Warner from United States.
3d. Deed from Francis Warner and wife to Henry B. Standard.
4th. Death of Henry B. Standard.
5th. Plaintiffs' relationship to Henry B. Standard which constituted them his sole heirs.

It will be noted that in this chain of title plaintiffs' counsel omits all reference to the final receipt from the land office dated May 17, 1881; the deed from Frank M. Warner to Allie D. Warner, dated June 20, 1881; the mortgage from Allie D. Warner to William

Corning dated January 13, 1883, and the sheriff's deed on the foreclosure of said mortgage from the Corning estate to defendant Walter D. Young, dated February 24, 1896. It seems to be the contention of counsel for appellants that he is justified in disregarding the deed from Frank M. Warner to Allie D. Warner upon several grounds:

1st. He claims that the given name of the grantor in the deed (Frank M.) is different from that (Francis) given in the receipt from the land office.

2d. It is asserted that inasmuch as the conveyance was made from Frank M. to Allie D. Warner prior to the issuance of the patent on May 10, 1884, Frank M. Warner had at the time of the execution and delivery of said deed no title to convey.

3d. That the deed is void because not signed by Sarah Hodgkins, the New York wife.

We will examine these claims as made:

*First:* It is asserted by counsel for defendants that Francis Warner and Frank M. Warner are one and the same person, indeed, Warner himself was sworn upon the trial and testified that his full name was Francis Marion Warner; that he sometimes signed Francis M. Warner and sometimes Frank M. Warner. We are of opinion that this objection is wholly untenable.

*Second:* This contention will be found to be negatived by the following decisions: *Johnson* v. *Ballou,* 28 Mich. 379; *Flint, etc., R. Co.* v. *Gordon,* 41 Mich. 420; *Fisher* v. *Hallock,* 50 Mich. 463. See, also, cases reported in note to 6 L. R. A. (N. S.) 934.

*Third:* It seems to be the settled law of this State that a wife living separate and apart from her husband in another State has no homestead right in her husband's lands in Michigan. *Stanton* v. *Hitchcock,* 64 Mich. 316 (8 Am. St. Rep. 821); *Black* v. *Singley,* 91 Mich. 50; *Hall* v. *Marshall,* 139 Mich. 123 (111 Am. St. Rep. 404). With reference to the decision in

*Stanton* v. *Hitchcock, supra,* counsel for appellants says:

"It seems to me that both of the Justices who discussed the *Hitchcock Case* had an erroneous conception of art. 16, section 2 of the Constitution (1850) and §§ 10362, 10363, 3 Comp. Laws 1897."

We have examined the authorities in question and are satisfied with the conclusions therein announced. It is therefore apparent that at the time the quitclaim deed from Francis Warner and wife to Henry B. Standard was executed and delivered on January 28, 1903, Francis Warner had already parted with his title to said lands. Plaintiffs' title, if any, therefore, must rest upon their assertion that they have acquired the same through adverse possession. This claim we will examine. Elizabeth Standard, widow of Henry B. Standard, testified:

"During the time I have resided here I knew a woman by the name of Rachael Potts.—She occupied this same description of land—Sometime from 1884 to about 1887—She received possession of this land from Francis Warner.—I know the possession of this property passed from Rachael Potts to Marcy Bradner—Marcy Bradner occupied the property about one year.—Marcy Bradner transferred possession of this property to Henry B. Standard. * * *
"After receiving possession of this property from Marcy Bradner my husband remained in possession of it up to the time of his death. He left no will disposing of his property and his estate has never been probated."

Harry Standard, one of the plaintiffs, testified:

"*Q.* Now you say that your father got permission to go on that land from Marcy Bradner?
"*A.* Yes, sir—I heard the arrangement or bargain made. The bargain was that she left the place wholly and fully in charge of my father, he could work it and crop it to his satisfaction—He was not to pay any taxes or anything for the use of it—he was to look

after it and could use it for looking after it. There was no arrangement made about trespass."

From this testimony it appears that the position of Henry B. Standard was that of a tenant or licensee of Marcy Bradner. We cannot find that Henry B. Standard ever made any claim of ownership to the property in question prior to the date of the quitclaim deed of January 28, 1903, nor is there any evidence of his having given any notice of his claim of ownership to any one except by placing the quitclaim deed upon record. It is settled law that a tenant or licensee cannot convert his occupancy under license into an adverse holding without actual notice to the holder of the legal title. *Campau* v. *Lafferty*, 50 Mich. 114; *Butler* v. *Bertrand*, 97 Mich. 59; *Hoban* v. *Cable*, 102 Mich. 206; *City of St. Joseph* v. *Seel*, 122 Mich. 70. The occupation of a small portion of the premises by Henry B. Standard or his children, plaintiffs, was not continuous up to the time of his death in October, 1906. From 1906 to 1908 it appears to have been occupied by one of the plaintiffs, but there is no evidence of occupation by any of the plaintiffs or any one in their behalf since 1908, no taxes upon the property have ever been paid, either by Henry B. Standard or his heirs. Under these circumstances we are of opinion that the circuit judge was correct in directing a verdict for the defendants because of the failure of plaintiffs to furnish clear and cogent proofs covering the essential facts necessary to constitute title by adverse possession. *Yelverton* v. *Steele*, 40 Mich. 538; *Pendill* v. *Agricultural Society*, 95 Mich. 491; and *Judson* v. *Duffy*, 96 Mich. 255.

The judgment is affirmed.

BIRD, C. J., and MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred. OSTRANDER, J., did not sit.