KEYZER v. PETERSON.

1. ADVERSE POSSESSION—PROOF.
   Proof to sustain a claim of title by adverse possession must be clear and cogent.

2. SAME—POSSESSION BY GRANTORS—PRESUMPTION—NOTICE.
   Where grantors owned property adjoining that conveyed, their possession of a strip of land in dispute along the boundary will be presumed to be in subordination to their own conveyance, in the absence of any change of circumstances or conditions which can be held to have given notice to the grantee or successors in title that any adverse claim to the land called for in their deed was being made.

3. SAME—BOUNDARIES—EVIDENCE—SUFFICIENCY.
   Where the testimony of plaintiffs' witnesses varied as to the different monuments upon which they relied to estab-

Authorities discussing the question of essential elements in adverse possession are collated in a note in 15 L. R. A. (N. S.) 1178.

lish their line, there was no such cogent and convincing proof of the occupancy of any particular strip of land as to warrant the court in saying that the title was acquired by adverse possession.

Appeal from Kent; McDonald, J. Submitted May 1, 1919. (Docket No. 93.) Decided May 29, 1919.

Bill by Peter Keyzer and another against Ed. Peterson and others to enjoin a trespass upon land. Defendants Lynch filed a cross-bill claiming title. From a decree for defendants, plaintiffs appeal. Affirmed.

*Dorr Kuizema,* for plaintiffs.

*Bartel J. Jonkman (Willis B. Perkins, Jr.,* of counsel), for defendants.

KUHN, J. The bill of complaint prays for an injunction to restrain the defendants from entering upon a small strip of land on the division line between the property of the plaintiffs and of the defendants. The plaintiffs and defendants both claim title to the land in question through one Alonzo Chilson, who, prior to 1886, owned the southeast quarter of section 19, town 8 north, range 10 west, in the township of Cannon, Kent county, Michigan. He died in 1886, leaving a widow and three children. The names of the children were Ada Spaulding, Rozella Young and Elmer Chilson, also spoken of in the briefs as Alonzo Chilson. It seems that some time after the death of Alonzo Chilson it became desirable to partition the land he had left, and in 1893 the widow and the two daughters deeded to Elmer Chilson the west 60 acres of the southeast quarter of section 19, and Elmer Chilson deeded to his two sisters the east 100 acres, reserving to the widow a life use thereof. The widow died in 1909. The plaintiffs' grantors (the two daughters of Alonzo Chilson) were continuously in the pos-

session of the east 100 acres until December 20, 1911, when they sold under a land contract to the present plaintiffs, and during the time' that they were in possession the land was worked by a number of persons, some of whom were tenants and some of whom were employees. The defendants and their predecessors in title have been continuously in possession of the west 60 acres since the division of 1893, and the land has passed through no less than a dozen hands before coming to the present defendants, who purchased the same on June 15, 1916. In 1916, one of the defendants, Michael Lynch, thinking that the plaintiffs were crowding in on his land, ordered a survey to be made by one of the official surveyors of Kent county. This line, being established by stakes driven by the surveyor, varied from 15 to 70 feet from the line claimed by the plaintiffs to be the true line. At the south end of the line the surveyor's stake was 14 to 17 feet east of the plaintiffs' claimed line, and at a point known as the south end of the woods, which is approximately 50 rods from the north end of the line, it was 60 to 70 feet east of the plaintiffs' claimed line, and at the north end of the line the surveyor ran the line 20 to 22 feet east of the plaintiffs' claimed line. The surveyed line was run straight, while the line claimed by the plaintiffs is irregular and crooked. This bow-shaped piece of property, straight on its easterly line and encroaching in a curve on the defendants' land, is the property in dispute. The defendants claim it by virtue of their deed and the plaintiffs claim it by adverse possession. The circuit judge, after a full hearing, refused to grant the relief prayed for.

The plaintiffs attempted to establish the line by certain landmarks, which are located by the different witnesses as marking the land which was actually occupied by the plaintiffs and their predecessors in

title. The most prominent is a stone pile on the south line of the property, and which it is claimed marked the beginning of the line at the southerly end thereof. One of the witnesses said that the line started with the stone pile on the south and ran to a rock halfway to the woods and thence to the timber. Another witness claimed that, starting with the stone pile, it ran through some berries and then to a stump and then to the woods.

In the consideration of the plaintiffs' claim, a fundamental rule established in this State must be borne in mind, announced in the early case of *Yelverton* v. *Steele,* 40 Mich. 541, that is, that the proof to sustain a claim of title by adverse possession must be clear and cogent. See, also, *Campau* v. *Campau,* 45 Mich. 367; *Marble* v. *Price,* 54 Mich. 466; *Paldi* v. *Paldi,* 95 Mich. 410; *Pendill* v. *Agricultural Society,* 95 Mich. 491; *Judson* v. *Duffy,* 96 Mich. 255; *Dummer* v. *Gypsum Co.,* 153 Mich. 622, 641; *Donohue* v. *Vosper,* 189 Mich. 78; *Simons* v. *McCormick,* 202 Mich. 485.

In *Paldi* v. *Paldi, supra,* it was said:

"Adverse possession, to give title, must be an actual, continued, visible, notorious, distinct, and hostile possession."

We think it sufficient for the purposes of this decision to say that it is conclusive from this record that the plaintiffs' possession has not been hostile during the statutory period. Their immediate predecessors, Ada Spaulding and Rozella Young, who in fact still own the legal title to said 100 acres, were the persons who granted to defendants' predecessors the deed by which defendants now claim title to the land in dispute. Presumptively, at least, the plaintiffs had possession of the disputed strip, if at all, in subordination to their own conveyance. See *Nugent* v. *Peterman,* 137 Mich. 646. In the record before us we find

no evidence of any change of circumstances or conditions which took place from the time of the original division of the property which can be held to have given notice to the defendants, or any of their predecessors in title, that any adverse claim to the land called for by their deed was being made. See 2 Corpus Juris, p. 143.

Moreover, the brief is indefinite as to the exact line which plaintiffs rely upon, as the witnesses do not seem to agree upon any exact line, but their testimony varies as to the different monuments upon which they rely to establish this line. We think, therefore, there is also merit in the claim of defendants' counsel that there is no such cogent and convincing proof of the occupancy of any particular strip of land as to warrant the court in saying that the title was acquired by adverse possession.

It follows, therefore, from these considerations that the trial judge properly denied the plaintiffs relief, and the decree entered for the defendants will be, and is therefore, hereby affirmed, with costs to the defendants.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.