## LEONETTI v. TOLTON.

1. HOMESTEAD—RESIDENTS—STATUTES.

Homestead statute applies only to property "owned and occupied by any resident of this State" (3 Comp. Laws 1929, § 14608).

2. SAME—NONRESIDENT WIFE—DEEDS—INTENT.

Wife living in foreign country, who had never lived in this State, but who intended to join husband as soon as immigration laws permitted, had no homestead interest in lot deeded by husband, although it was resold to him on contract and became his homestead after house was erected thereon and wife joined him, and therefore said deed was not void because not signed by wife.

McDONALD, C. J., dissenting.

Appeal from Wayne; Spier (James E.), J., presiding. Submitted April 11, 1933. (Docket No. 78, Calendar No. 37,036.) Decided October 19, 1933.

Bill by Alfonso Leonetti and Mary Leonetti against Harry Tolton and others to have a deed and contract declared a mortgage and to subject the property to inchoate dower of the wife. Bill dismissed. Plaintiffs appeal. Affirmed.

*Harry Riseman,* for plaintiffs.

*Samuel Hechtman (Morley E. Keyes,* of counsel), for defendant Equitable Trust Company (formerly Central Trust Company).

McDONALD, C. J. (*dissenting*). The plaintiffs are husband and wife. They brought this suit to have a deed and contract declared to be a mortgage, and to subject the property to the inchoate right of

dower of the wife, who did not sign the conveyance. The plaintiff Alfonso Leonetti, a native of Italy, is a resident of Detroit, Michigan. In 1926 he made a visit to Italy and while there married. He returned to Michigan, but was unable at that time to bring his wife with him on account of the necessary delay in securing a passport for her. It was not until October, 1929, that she was permitted to enter this country. She then joined her husband in Detroit, where they now reside. In April, 1929, before his wife came to Detroit, he deeded a vacant lot to Tolton & Johnston, with an agreement that they would erect a brick bungalow thereon and resell to him. The building was erected and a land contract executed. The consideration was $8,190. The down payment was the deed to the lot. To provide funds for erecting the building, Tolton & Johnston mortgaged the property to the Central Trust Company of Detroit for $5,200. Alfonso Leonetti consented to the mortgage in writing, and agreed that the mortgage lien should have priority over his vendee's interest in the land contract. Subsequently, Winfield B. Phillips purchased the interest of the vendors, but before doing so Alfonso Leonetti executed a written declaration that the conveyance to Tolton & Johnston was intended as an absolute deed and not as a mortgage. The instruments in question were executed by Alfonso Leonetti as a single man, although he claims to have told Tolton & Johnston that he had a wife in Italy who would soon join him in Detroit. On these facts, which are here but briefly stated, the plaintiffs contend that the deed to Tolton & Johnston, though absolute on its face, was intended to be a mortgage; that whether it be treated as a deed or as a mortgage it was void because Mary Leonetti did not join in its execution;

that whether it be treated as a deed or mortgage the premises were a homestead and the instrument was void without the wife's signature; that Mary Leonetti was a resident of the State of Michigan at the time of the conveyance and had an inchoate right of dower in the premises conveyed; and that the plaintiffs' interest in the property has priority over the mortgage lien of the Central Trust Company. The trial court held against the plaintiffs on all 'of these contentions, and entered a decree dismissing their bill. They have appealed.

1. The evidence shows that the deed in question was not given as security for a loan and was not intended as a mortgage. The lot conveyed was not of sufficient value to secure Tolton & Johnston for the money which they were expected to expend in improving the premises. It was intended that they would advance their own credit and mortgage the property in order to provide money for the building. Unless the deed was absolute they could not do this. That the plaintiff Alfonso Leonetti so understood the effect of the conveyance appears from the fact that when Tolton & Johnston conveyed their vendor's interest to Winfield Phillips, he made a written declaration that the deed was not intended as a mortgage. Apart from this, it is a fair inference from the attending circumstances that the intention and agreement of the parties was that the deed should be an absolute conveyance of Leonetti's interest in the property with the privilege of repurchasing it after the erection of the building. The trial court correctly held that it was not a mortgage. *Reid* v. *Dowd,* 257 Mich. 492; *Stahl* v. *Dehn,* 72 Mich. 645.

2. Was Mary Leonetti a resident of the State of Michigan when the deed was executed? On the an-

swer to this question depends her right of dower. Mary Leonetti, being an alien, could not for that reason be barred of her dower. Nor because of non-residence would she be barred of dower in lands of which her husband died seized, but if a nonresident, her right of dower is barred by a conveyance executed by the husband alone. 3 Comp. Laws 1929, § 13088; *Legare* v. *Semple,* 32 Mich. 438.

The plaintiffs were married in Italy in 1926. The husband was a resident of the State of Michigan. When he returned to this country soon after their marriage, it was intended that his wife should follow him as soon as she was able to secure a passport. The passport was applied for and was approved May 15, 1929, but was not issued until October 12, 1929. On October 23, 1929, she joined her husband in Detroit, where they still reside. We think these facts are sufficient to show that she was a resident of Michigan at the time. the deed in question was executed on April 18, 1929.

In this State domicile and residence are treated as synonymous terms. Alfonso Leonetti's domicile or residence was in the State of Michigan. Mary Leonetti's domicile was in Italy, but upon marriage her domicile became merged in his and followed him to Michigan, though she was not physically present or actually lived here with him. They were temporarily separated, not from choice of either but because of the immigation laws. Their intention was to live together in Michigan on the property in question, and they carried out that intention as soon as possible after the marriage. If she had refused to come to Michigan, or if she had not intended to come and he had not intended she should come, she would not have gained a residence here by her marriage. But their relations were amicable and their

separation temporary. We think the question is ruled by *Gluc* v. *Klein,* 226 Mich. 175. In that case defendant, Klein, and his wife were residents of the State of Minnesota. The wife became insane and was committed to an asylum. Mr. Klein moved to Michigan, where he established a residence. In making a conveyance of some property a question arose as to his wife's residence. This court held that by marriage her residence was merged in that of her husband and followed him into Michigan, though by reason of her mental infirmity she was not physically present with him. So in the instant case, the wife's residence by marriage became merged in that of her husband and followed him to Michigan, though by reason of the immigration rules she was temporarily prevented from being actually with him. This rule is well stated in 19 C. J. pp. 401–410. As a matter of fact and of law, Mary Leonetti was a resident of the State of Michigan at the time her husband executed the deed, and, therefore, is not barred of her right of dower in the premises conveyed.

3. Was the property conveyed a homestead?

"It is well-settled law in Michigan that actual residence upon a claimed homestead is not necessary to entitle the owner to its protection and preservation as such, provided the owner has an honest intention and purpose of actually establishing his home thereon, and this intention is accompanied by overt acts evidencing such plan and purpose." *Haight* v. *Reynolds,* 257 Mich. 11, 14.

It is undisputed that Alfonso Leonetti intended this property to be his homestead, and that after his wife joined him in Detroit it was actually occupied as such. With this intention and for this purpose he caused a home to be built on the premises.

His intention accompanied by the overt act of building the home and afterwards occupying with his family establishes it as a homestead at the time he executed the conveyance. A deed of a homestead without the wife's signature is void.

4. Is the mortgage of the Central Trust Company superior to the interest of the plaintiffs in the property?

The consideration of the mortgage went into the construction of the building. The plaintiffs received the benefits. The recorded deed showed no interest in Mary Leonetti. It was executed by Alfonso Leonetti as a single man. In addition to knowledge obtained from the public record of title, the mortgagee had the vendee's written consent to the giving of the mortgage and his agreement that it should have priority over his contract interest in the property. There was no showing of fraud. The mortgagee acted in perfect good faith. It had a right to rely on the public record and the unrecorded agreement of the vendee. It had no notice or knowledge of any other interest. Its mortgage is good and is superior to all other interests in the property.

A decree should be entered in this court in accordance with this opinion.

POTTER, J. I dissent from the opinion of Mr. Justice McDONALD. The deed claimed to be invalid for want of the wife's signature was executed by the husband April 18, 1929. At that time his wife was in Italy. She had never been in America, though she intended to join her husband here and did so October 23, 1929, six months and five days after the deed was executed. It is claimed she had a homestead interest in the lands deeded six months and five days before she even saw them, when she

was living in Italy, where she had always lived up to that time. She had no homestead interest in the real estate deeded. The homestead statute applies only to property "owned and occupied by any resident of this State." 3 Comp. Laws 1929, § 14608.

Exemptions are a matter of local State policy, to encourage the comfort and industry of the people, and do not exist for the benefit of the persons resident in other jurisdictions. *McHugh* v. *Curtis,* 48 Mich. 262. The homestead law of this State—

"was designed to protect those who had subjected themselves to its laws, and acted in reliance on them, but not to treat as homes what are not homes, or give powers to nonresidents which could not, under any circumstances, be of any use to them personally." *Stanton* v. *Hitchcock,* 64 Mich. 316 (8 Am. St. Rep. 821).

In *Black* v. *Singley,* 91 Mich. 50, plaintiff claimed under a deed from Abner Moore. Defendants claimed the deed was void because Moore's wife had not joined in the conveyance. Moore came to Michigan and lived here many years. His wife lived separate and apart from him in Pennsylvania. It was held she was not entitled to homestead rights in the lands acquired by him in this State.

"The husband and wife, living separate and apart under circumstances such as these, might each claim a homestead, the one in Pennsylvania and the other in Michigan, but neither could claim both."

In *Hall* v. *Marshall,* 139 Mich. 123 (111 Am. St. Rep. 404), the wife sought to avoid a real estate mortgage by the husband upon the ground the property mortgaged constituted a homestead, and she had not signed the mortgage. It is said:

"The evidence is that she had not at the date of this mortgage lived upon the premises. She had

never seen them at this time, and did not see them for years afterwards. She continued to reside in Ohio, and for years bore her maiden name. During all the years prior to Mr. Marshall's death she never visited Detroit but once. * * * She testifies that she then declared to her husband that she intended to remain in the house, but yielded to persuasion and left, returning to her home in Cincinnati. We think these facts bring this case clearly within the holdings in *Stanton* v. *Hitchcock,* 64 Mich. 316 (8 Am. St. Rep. 821), and *Black* v. *Singley,* 91 Mich. 50. The defendant had not, before the date of the mortgage, so occupied these premises as to entitle her to claim homestead rights as against one who was ignorant of her marriage.''

''Is a nonresident entitled to the benefit of the exemption? That question cannot be regarded as an open one in this State. It was decided in *Mc-Hugh* v. *Curtis,* 48 Mich. 262, that the exemptions given by our laws are personal privileges which cannot be claimed by nonresidents of this State.'' *Kelson* v. *Railway Co.,* 146 Mich. 563 (10 Ann. Cas. 500).

''It seems to be the settled law of this State that a wife living separate and apart from her husband in another State has no homestead right in her husband's lands in Michigan.'' *Standard* v. *Jewell,* 206 Mich. 61.

''Residents of the State only are entitled to the benefit of the homestead exemption created by its laws, whether these laws expressly limit it to residents or not. Mere intention to become a resident and to abandon a residence in another State does not give to a person the right to claim the homestead exemption.'' 29 C. J. p. 792.

''No homestead right can be acquired by an alien whose family had never resided within the State, but lived in a foreign country.'' 13 R. C. L. p. 564,

The grantor's wife may have intended to come to Michigan, but to constitute a change of residence, under the circumstances, there must have been a concurrence, not only of the actual intent upon her part to abandon her residence in Italy and acquire her residence in Detroit, but there must have been a carrying out of that intention by her actual removal from Italy to Detroit. The fact and the intent must concur. *Beacher* v. *Common Council of Detroit*, 114 Mich. 228; *Rue High*, 2 Doug. 515; 19 C. J. pp. 401–410. The deed was valid when made, and cannot be rendered invalid by the subsequent action of the wife.

Decree is affirmed.

SHARPE, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred with POTTER, J. CLARK, J., took no part in this decision.